IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CRIMINAL NO. 3:08-590-CMC |
| | ) | |
| v. | ) | **OPINION and ORDER** |
| | ) | |
| Gonzales L. March, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Defendant has filed a motion for relief pursuant to 28 U.S.C. § 2255, raising three claims for relief. The Government has moved for summary judgment, and Defendant has responded in opposition, both *pro se* and through counsel. In his *pro se* response to the Government's motion, Defendant abandons his first two grounds for relief. See Reply at 4 (Dkt. #1257, filed Feb. 17, 2011). Therefore, the court **grants** the Government's motion for summary judgment as to Grounds One and Two.[1] The remaining Ground for relief is Defendant's claim of ineffective assistance of counsel. For the reasons set forth below, the court **grants** the Government's motion for summary judgment as to this Ground for relief as well and dismisses Defendant's motion in its entirety with prejudice.

**BACKGROUND**

---

[1] Even if Defendant had not abandoned his argument relating to Ground One, his position is foreclosed by the Fourth Circuit's decision in *United States v. Pettiford*, 612 F.3d 270 (4th Cir. 2010), *cert. denied*, 131 S. Ct. 620 (U.S., Nov. 15, 2010). In *Pettiford*, the Fourth Circuit held that "actual innocence applies in the context of habitual offender provisions only where the challenge to eligibility stems from factual innocence of the predicate crimes, and not from the legal classification of the predicate crimes." *Pettiford*, 612 F.3d at 284.

In this instance, Defendant does not argue, even in responding to the Government's motion to dismiss, that he is factually innocent of the state FTSBL conviction. Instead, Defendant argues that the legal classification of the crime in question – FTSBL – precludes his being classified as a Career Offender. This argument is foreclosed by *Pettiford*.

Defendant was indicted in June 2008 for drug conspiracy, a violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(D). Defendant was also charged with several counts of using a telephone to commit a drug trafficking crime, in violation of 21 U.S.C. § 843(b).

On September 25, 2008, Defendant entered into a cooperation plea agreement with the Government in which he agreed to plead guilty to the lesser-included offense in Count 1 (conspiracy to possess with intent to distribute 500 grams or more of cocaine) and one count of use of a telephone to commit a drug trafficking crime.  The written plea agreement contained a paragraph wherein Defendant agreed to waive "the right to contest either the conviction or the sentence in any direct appeal, or other post-conviction action, including any proceeding under 28 U.S.C. § 2255. This waiver does not apply to claims of ineffective assistance of counsel or prosecutorial misconduct."   Plea Agreement at 9, ¶18 (Dkt. #612, filed Sept. 25, 2008).

On that same date, the court conducted a change of plea hearing in accordance with Rule 11 of the Federal Rules of Criminal Procedure.  At the plea hearing, Defendant sought to strike the paragraph wherein he agreed to waive his appellate and post-conviction rights ("paragraph 18."). The Government, however, was "not willing to agree to delete the appeal waiver provision from [the] plea agreement."  Tr. Change of Plea Hr'g. (hereinafter "Tr. Pl.") at 2 (Dkt. #844, filed Apr. 15, 2009).   After a full discussion in open court, Defendant agreed to the waiver of his appeal and post-conviction rights (except for the above-listed exclusions).  *Id.* at 11.   The court thereafter reviewed the entire plea agreement with Defendant, including paragraph 18,  and again Defendant orally indicated that he understood the waiver and its ramifications.  *Id.* at 35.

In the course of the Rule 11 hearing, this court also discussed Defendant's State of South Carolina conviction for failure to stop for a blue light (FTSBL) and its potential impact on his federal sentence.  *Id.* at 27-29.  This court advised Defendant that his FTSBL conviction would

2

likely be counted as an offense which could lead to him being found a career offender under the advisory sentencing guidelines.[2] *Id*. at 28. Defendant was specifically advised by the court, however, that it was "up in the air" whether the Fourth Circuit Court of Appeals would continue to hold that a South Carolina FTSBL conviction was a qualifying predicate offense for career offender purposes. *Id*. at 29.

> Specifically, the following discussion occurred:
>
> Court: I can't tell you right now what that ruling will be because I don't know what the court of appeals . . . will tell me on that. Do you understand?
>
> Defendant: Yes, ma'am.

*Id*. At the conclusion of the Rule 11 hearing, Defendant agreed to the terms of the plea agreement and entered a plea of guilty. *Id*. at 43.

The United States Probation Office (USPO) thereafter prepared a Presentence Report (PSR). The PSR found that based upon Defendant's prior criminal record, including the FTSBL offense, Defendant was a career offender. Defendant, through counsel, filed objections to the PSR, including an objection relating to his designation as a career offender based upon his FTSBL conviction.

On April 22, 2009, Defendant appeared for sentencing. At the beginning of the hearing, the Government and Defendant's counsel indicated that an agreement had been reached on the career offender objection. *See* Tr. Sentencing (hereinafter "Tr. Sen.") at 2-11 (Dkt. #1041, filed May 29, 2009). As outlined by counsel, Defendant would agree to withdraw his objection to the career offender designation, and the Government would agree to withdraw the § 851 Information and to argue for a minimum sentence under the applicable guideline range. *Id*. This agreement would lower Defendant's advisory sentencing guideline range from 262-327 months' imprisonment to

---

[2]Including the FTSBL conviction, Defendant had only two qualifying predicate offenses.

3

188-235 months' imprisonment. *Id*. at 2-5.  The agreement also provided that Defendant would be free to argue for a sentence as low as the statutory mandatory minimum of 60 months' imprisonment. *Id*. at 8.

Defendant discussed the options with his attorney.  This court explained to Defendant that he could reject the Government's offer and go forward with his career offender objection and that the Fourth Circuit Court of Appeals or Supreme Court might ultimately decide that a South Carolina FTSBL conviction was not a qualifying career offender predicate offense. *Id*. at 9.  Defendant indicated that "I will go ahead and take the government offer." *Id*. at 12.   Later during the sentencing hearing the court again explained to Defendant:

> Court:  But as I said, you can't have it both ways.  You can't take this deal and still have the objections.
>
> Defendant:  I understand that.
>
> Court:  You can still say I want my objections and we will go through them, but if you want the deal, you have to say that I am not going to make my motions.
>
> Defendant:  I am going to take the deal.
>
> Court:  You want to withdraw your objections?
>
> Defendant: Yes, ma'am.

*Id*. at 13-14.

Defendant's applicable advisory sentencing guideline range was then calculated to be 188 to 235 months' imprisonment. *Id*. at 14.  After argument from counsel, the court varied from the advisory guidelines range and sentenced Defendant to 144 months' imprisonment. *Id*. at 27.   In withdrawing his objection, Defendant was designated a career offender, but this court found his two prior convictions were "borderline" prior convictions "in terms of their seriousness." *Id*. at 27.

Defendant appealed to the Fourth Circuit Court of Appeals.  The Government did not seek

to enforce the appeal waiver, but the Fourth Circuit found that based upon Defendant's affirmative and knowing withdrawal of his objection at sentencing, he had waived appellate review of the FTSBL issue. *United States v. March*, 392 F. App'x 155, 157 (4th Cir. 2010).[3]

Defendant thereafter timely filed the current § 2255 motion.

### **GROUND THREE: INEFFECTIVE ASSISTANCE OF COUNSEL**

Defendant contends in his remaining Ground for relief that his plea and sentencing counsel were ineffective in failing to secure a plea agreement which did not contain an appeal and collateral attack waiver (plea counsel), and in failing "to do research before sentencing, failure to file appeal, and failure to research change of law." Reply to Gov't Resp. (hereinafter "Reply") at 2 (Dkt. #1257, filed Feb. 17, 2011).

The standard governing ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to succeed on such a claim, Defendant must first show that his counsel's performance was "deficient," *Strickland*, 466 U.S. at 687-88, and that such deficiency resulted in actual prejudice to Defendant. *Id*.

As to the first prong of the *Strickland* test, a defense attorney's conduct is deficient if it fails to meet a standard of "reasonably effective assistance." *Id*. at 687. A person challenging a conviction must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 689. A reviewing court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. *See also Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993).

"With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but

---

[3]"Such a waiver is distinguishable from a situation in which a party fails to make a timely assertion of a right-what courts typically call a forfeiture, which as noted above, may be reviewed on appeal for plain error." *March*, 392 F. App'x at 157 (internal quotations and citations omitted).

for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 694).

An analysis of an ineffective assistance of counsel claim can initially focus on the prejudice prong of the *Strickland* test, as "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

This same general standard also applies in circumstances where a defendant enters a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). "[I]n the plea context, counsel's deficient performance is prejudicial only if 'there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (quoting *Hill*, 474 U.S. at 59)). *See also Hill*, 474 U.S. at 59 (Defendant must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process."); *id.* at 60 (defendant "alleged no special circumstances that might support the conclusion that he placed particular emphasis on his [right to appeal] *in deciding whether or not to plead guilty*.") (Emphasis added.).[4]

---

[4]Nowhere in his § 2255 motion does Defendant contend that absent trial counsel's actions, he would not have pleaded guilty. Indeed, Defendant indicates that his "guilt" was a "foregone conclusion as early as the day of his arrest on June 16, 2008, when he provided the arresting officers with his full cooperation, and made full disclosure statements concerning his involvement in the charged conspiracy." Reply at 15. *See also* Mem. Supp. of Mot. (hereinafter "Mem. Supp.") at 16 (Dkt. #1239-1, filed Nov. 29, 2010) (Defendant had an "immediate willingness to accept full responsibility for his and others crimes."); Reply at 15 (Defendant "leaned heavily towards a plea agreement with the government . . . .").

6

**DISCUSSION**

1. Plea Agreement

Defendant argues plea counsel was ineffective in failing to secure a more favorable plea agreement which did not include paragraph 18.

Counsel attempted to accede to Defendant's wishes by striking paragraph 18. However, the Government clearly stated that it was unwilling to enter into this particular plea agreement absent the waiver. *See* Tr. of Change of Plea Hr'g (hereinafter "Tr. Pl.") at 2 (Dkt #844, filed Apr. 15, 2009) ("[T]he bottom line is the government is not willing to agree to delete the appeal waiver provision from that plea agreement."). There is no showing that additional efforts by counsel to secure the plea agreement without paragraph 18 would have been successful.

In the end, despite the waiver, Defendant filed an appeal to the Fourth Circuit Court of Appeals. The Government did not seek to enforce the waiver. *United States v. March*, 392 F. App'x 155, 156-57 (4th Cir. 2009). Therefore, its inclusion in the plea agreement could not have prejudiced Defendant. Therefore, counsel was not ineffective, nor has Defendant established prejudice. Accordingly, the Government is entitled to summary judgment on this claim, and it is dismissed with prejudice.

2. Sentencing

Defendant contends sentencing counsel was ineffective in his "failure to do research before sentenc[ing], failure to file appeal, and failure to research change of law." Reply at 2. Defendant also contends counsel was ineffective when "he advised [Defendant] to withdraw his objection to being designated as a career offender [and] allowed the government to dupe him into its devise [sic] to destroy a meritorious claim." Mem. Supp. at 29. Defendant maintains counsel's advice to accept the sentencing agreement prejudiced him by causing him to drop "a meritorious claim." *Id*.

As noted above, to be deemed ineffective, a defense attorney must have made "errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 U.S. at 689.  A reviewing court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690.

At sentencing, the following colloquy occurred:

Court:  Okay.  Mr. Eleazer, have you had a chance to discuss this fully with Mr. March[?]

[Defense Counsel]:  Your Honor, we have been having discussions over and over for a long period of time.  And I will tell you, your Honor, I think his decision to do that is based on my recommendation because up until just a little while ago, we were going to contest the career offender under [*United States v. Roseboro*, 551 F.3d 226 (4th Cir. 2009)].  But in looking at -- in looking at all of the documents, I thought this was the sure thing for him as opposed to having a chance at getting a lesser sentence, so that is why I recommended that to him.

Court:  If he were not a career offender, but he had the 851 enhancement, where would he be?

Defense Counsel:  He would be -- I think it was 70 to 87 with mandatory minimum of 120.  He would be –

Court:  Why would mandatory -- that's true.

Defense Counsel:  Mandatory.

Court: Still have that 851 on there. Have that one on there. So –

Defense Counsel:  Looking at 120 months mandatory minimum.

Court:  Even if he wins on the career offender issue?

Defense Counsel:  If he wins on that.  And although I think he has a chance at that, this is a sure thing and it is a seven and a half year difference off of what career offender would give him under the guidelines, 262 months.

Court:  Right.

Defense Counsel: He doesn't like it. It is a lot of time, but that is where we are.

###

Court: Mr. March has to make the decision he has to listen to his lawyer. I can't tell you how I would rule in advance on your motion for downward departure, and I can't tell you how I would come out on the 3553(a) factors if you entered in this agreement. In other words, [the prosecutor] is going to recommend a 188 month sentence, which is the bottom of that new guideline range if you agree to this. You would be able to argue for a variance from that, but it would not -- and I guess if you go to that, there is no longer a ten year mandatory minimum, right?

Defense Counsel: That's right.

Court: So you could argue for a sentence of down to sixty months, but you couldn't argue for anything less than that, right? Is that your understanding?

Defense Counsel: Yes, ma'am.

Court: And I don't know how I will come out on that until I hear all of the argument. So I can't tell him what his sentence will be.

###

So, on your challenge to whether or not he is a career offender or not, I will tell you that it is unlikely that I would sustain your objection that he would probably be found to be a career offender. Now, that is not to say that down the road either the Fourth Circuit or the Supreme Court might change that. There are lots of issues, as you know, percolating around about [*Roseboro*] right now. And there is a circuit split on that point, 11th Circuit has gone the other way, several other circuits have gone the same way as the Fourth, sort of. And I don't know whether the Supreme Court will take that up, and, if they do, how it will come out. So I assume you have discussed that with him and it is just a question of whether he wants to go that route or make that argument. If he were to prevail on that, he would come back in a much better situation. If he loses on that, it is over, he is –

Defense Counsel: Bird in the hand, two in the bush.

Court: Long, long sentence if he loses, and he won't know for a while. My prediction, it will take a couple of years for that to get through the courts.

###

So all of that to say, I want him to make his own decision after he has received your

9

>advice.
>
>Defense Counsel: Yes, ma'am.
>
>Court: Mr. March, you have heard all of this. You have basically two choices here. One, you can go forward with your objections and your motion that have been filed already and I can rule on those. Or you can agree with the government to withdraw your objections, to withdraw your motion, and they will in return agree to withdraw the 851 information, and to which would result in a three-level reduction in your total offense level and would bring your guideline range down to 188 to 235 months. And they have agreed that they would recommend the bottom range of that guideline. And you and your attorney can argue for a lesser sentence than that. And I can't tell you right now what that sentence would be until I have heard everything. So what is your choice?
>
>The Defendant: I will go ahead and take the government offer.
>
>Court: Okay. All right.
>
>###
>
>But now if you are going to take this agreement with the government, part of that agreement is that you are agreeing to withdraw all of your objections.
>
>###
>
>But as I said, you can't have it both ways. You can't take this deal and still have the objections.
>
>The Defendant: I understand that.
>
>Court: You can still say I want my objections and we will go through them, but if you want the deal, you have to say that I am not going to make my motions.
>
>The Defendant: I am going to take the deal.
>
>Court: You want to withdraw your objections?
>
>The Defendant: Yes, ma'am.

Sen. Tr. at 5-14.

>Defendant's counsel was fully aware that the FTSBL issue was in a state of flux in the Fourth

10

Circuit. He discussed this issue with Defendant, and was prepared to argue Defendant's career offender objection on Defendant's behalf. However, counsel was also aware that existing Fourth Circuit precedent dictated that the objection would likely be overruled. Additionally, counsel was aware of the appeal waiver in the plea agreement, and that Defendant would "have that hurdle as well." Tr. Sen. at 10. The Government did not seek to enforce the appeal waiver when Defendant filed an appeal. However, counsel could not have known this at the time of sentencing.

As evidenced by the above-quoted record, apart from the recommendation of counsel, Defendant made his own decision to withdraw his objections following an extensive colloquy with the court. The law indeed changed in the Fourth Circuit regarding South Carolina FTSBL convictions. However, clairvoyance is not a quality required of criminal defense attorneys, and Defendant cannot demonstrate counsel was ineffective in advising him to take a deal that benefitted him greatly under precedent existing at the time Defendant was sentenced. *United States v. McNamara,* 74 F.3d 514, 516-17 (4th Cir. 1996) (citing *Kornahrens v. Evatt,* 66 F.3d 1350, 1360 (4th Cir. 1995)) (counsel not ineffective for failing to anticipate a change in the law).

As to Defendant's assertion regarding counsel's alleged failure to file an appeal, Defendant does not contend that he told counsel to file an appeal, and the court notes Defendant filed his own timely appeal. *See United States v. March*, 392 F. App'x 155 (4th Cir. 2010). Therefore, this contention is rejected.

Accordingly, for the foregoing reasons, the Government is entitled to summary judgment on this claim, and it is dismissed with prejudice.

### CONCLUSION

For the reasons noted above, the Government's motion for summary judgment is **granted** and this motion is dismissed with prejudice.

**CERTIFICATE OF APPEALABILITY**

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c).  A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable.  *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001).  In this case, the legal standard for the issuance of a certificate of appealability has not been met.  Therefore, a certificate of appealability is **denied**.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
June 10, 2011